## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## PANAMA CITY DIVISION

**THOMAS C. O'BRYANT,**
            **Plaintiff,**

**vs.**                                             **Case No: 5:05cv111/LAC/MD**

**M.D. FINCH, et al.,**
            **Defendants.**

---

### REPORT AND RECOMMENDATION

This case filed pursuant to 42 U.S.C. § 1983 is now before the court upon the defendants' special reports (doc. 43 & 63) to which the pro se plaintiff, who is proceeding *in forma pauperis* in this action, has responded.  (Doc. 93).[1]  On May 10, 2007, this court entered an order advising the parties of the importance and ramifications of Rule 56 summary judgment consideration, and informing the parties that the special report would be construed as a motion for summary judgment (doc. 95).  Plaintiff filed a further response to special report (doc. 96), defendants filed a notice of supplemental authority (doc. 97) and plaintiff filed a response to the notice of supplemental authority.  (Doc. 100).

### Background

Plaintiff is currently incarcerated at Mayo Correctional Institution.  He initially brought this action in May of 2005 pursuant to 42 U.S.C. § 1983 to redress alleged

---

[1]Court records reflect that plaintiff has paid $200.00 towards the $250.00 filing fee in this action.

violations of his First Amendment Rights.   In his amended complaint (doc. 11) (henceforth "complaint"),[2] plaintiff names seven defendants: M.D. Finch, Shannon R. Herring, B.G. Baines, J.A. Peters, C.L. Pittman, G.L. Taylor and Vanessa Rhynes.

In plaintiff's complaint he describes a consultation that he had on October 27, 2004 with a Corrections Officer Trino, who is not named as a defendant in this action.   C.O. Trino, upon being questioned by the plaintiff about the consultation, called for a supervisor and three other corrections officers came to the scene, Sgt. Segars, Officer Gillman, and Officer Langford.   Sgt. Segars stood over plaintiff and told him words to the effect of "Whenever one of my officers tells you something's a rule, it's a rule. Don't ever ask where a rule is." (Complaint ¶ 8).   Officer Gillman then told plaintiff words to the effect of "If you ever ask me where a rule is, I'll say you called me a dumbass, or I'm stupid, or that I've got my head up my ass.  I'll lock you up for disrespect."  (Complaint ¶ 9).   Plaintiff states that he filed informal and formal grievances against Segars and Gillman, but the grievances went unanswered. (Complaint ¶¶ 11, 12, 13, 14).   On December 10, 2004, after having received no response from the warden he filed a grievance to the DOC Central Office.   Later the same day Sgt. Segars came to plaintiff's cell and threw plaintiff's formal grievance on his bunk and left. (Complaint ¶¶ 14, 15).

Three days later, on December 13, 2004, defendant Finch came to plaintiff's cell and told him that he was going to search the cell because of the grievances plaintiff had filed against Segars and Gillman, and that the "shakedown" was "lesson one" in how grievance writers were dealt with at H.C.I.  (Complaint ¶¶ 16, 17, 18).   Plaintiff was instructed to meet Finch "behind the curtain[3] for lesson two about writing grievances" at H.C.I. (Complaint ¶ 19).  Plaintiff states that he was essentially told by Finch that individuals who wrote grievances against staff were not looked

---

[2]The allegations in this complaint were sworn under penalty of perjury on October 14, 2005.

[3]According to plaintiff, the "curtain" separates the disciplinary confinement wing of H-dorm from the open population wing.  (Complaint ¶ 20).

upon favorably at H.C.I., that the shakedown was a result of plaintiff's grievance activity and that if he continued to write grievances the staff would start writing DR's against plaintiff and he would end up in disciplinary confinement. (Complaint ¶¶ 21-26). Plaintiff filed a grievance of reprisal against Finch on the same day. (Complaint ¶ 28). Plaintiff reported this conversation to his mother, who stated she would call defendant Peters the next morning. (Complaint ¶ 27). Plaintiff was called to Lt. Peters' office on December 14, 2004 to discuss what had happened. Peters told him he would speak to the staff involved. (Complaint ¶¶ 29-33).

Later in the same day, Officer Trino called plaintiff to the sallyport to speak with him. Trino told plaintiff that Segars' and Gillman's comments were not threats and harassment, but were just "the way things are." (Complaint ¶¶ 36-38). After the conversation, Trino told plaintiff to go to see defendant Herring because he wanted to talk to plaintiff as well. Plaintiff learned while waiting to speak to Herring that Trino was inventorying plaintiff's cell because he was going to confinement. (Complaint ¶ 44). Herring told plaintiff that he was "going to jail[4] for disrespect." (Complaint ¶ 47). When plaintiff asked who he had allegedly disrespected, Herring responded that plaintiff had disrespected Herring, and when plaintiff asked what he had said, Herring allegedly said that he would "think up something" although plaintiff contends that he never made any disrespectful comment to Herring. (Complaint ¶¶ 49-53). Plaintiff contend that the DR that Herring ultimately wrote against him was false and written for purely retaliatory reasons. (Complaint ¶¶ 55-58).

On December 16, 2004, while plaintiff was in confinement, Finch allegedly stopped in front of his cell and commented "I thought you were smart, Stupid. That's alright, though. You're in my world now, O'Bryant" before walking away. (Complaint ¶¶ 60-62).

---

[4]Jail, according to plaintiff, refers to confinement. (Complaint ¶ 48).

On December 17, 2004 defendant Baines stopped by plaintiff's confinement cell and made a comment which plaintiff could not hear.  When he asked Baines what he had said Baines responded "You'll find out" and walked away.  (Complaint 63-65).

On December 20, 2004 plaintiff filed a grievance of reprisal against Herring with respect to the DR written against him.  (Complaint ¶ 66).  Plaintiff appeared before a disciplinary hearing team for that DR the following day.  The two-member team consisted of defendants Pittman and Peters, even though Peters had been listed as a witness by the plaintiff.  (Complaint ¶¶ 59, 68).  Plaintiff was found guilty and sentenced to 30 days of disciplinary confinement.  (Complaint ¶ 69).

Plaintiff appealed the disciplinary action claiming that the DR was false and written in retaliation; that he had not received credit for time spent in confinement, that the disciplinary hearing team was not impartial because a witness presided over the hearing and because one team member was under the supervision of the individual who authorized the DR to be written.  His appeal was unsuccessful. (Complaint ¶ 70).

On December 21, 2004 plaintiff was served a DR written by defendant Baines charging him with "disrespect to officials."  Plaintiff maintains that this DR also was entirely false and written for purely retaliatory reasons.  (Complaint ¶¶ 71-73).  A hearing was held on this DR on December 29, 2004.  With defendants Taylor and Rhynes presiding, plaintiff was found guilty based upon Baines' statement and sentenced to 30 days in confinement to be served consecutively to the 30 days he was already serving.  (Complaint ¶¶ 74-77).

Plaintiff appealed the second decision claiming requested evidence was not produced; he did not receive credit for time spent in confinement pending the hearing; the disciplinary team was not impartial because one team member was under the supervision of the individuals who authorized the DR to be written; the DR

was false and written for retaliatory reasons; and the statement of facts did not support the charge. (Complaint ¶ 78).

Plaintiff contends in his first, second and third claims that defendants Finch, Herring and Baines retaliated against him for his filing of grievances. (Complaint ¶¶ 82-93). In his fourth claim he asserts that defendant Peters violated his Fourteenth Amendment right to due process when he presided over the disciplinary hearing when he was listed as a witness. (Complaint ¶¶ 94, 95). In his fifth claim, he maintains that defendants Peters and Taylor violated his Fourteenth Amendment right to an impartial disciplinary hearing when they presided over the disciplinary hearing knowing that one member of each disciplinary hearing team was under the immediate supervision and/or control of the individuals who authorized the DR to be written and processed. (Complaint ¶¶ 96-100). Plaintiff's sixth claim alleges that defendants Peters and Pittman violated his Fourteenth Amendment rights when they failed to credit his time spent in administrative confinement against the punishment imposed at the hearing. (Complaint ¶¶ 101-102). Plaintiff's final claim is that defendants Taylor and Rhynes violated his Fourteenth Amendment rights to due process when they failed to produce at the hearing evidence that plaintiff had specifically requested by produced. (Complaint ¶¶ 103-105).

Plaintiff seeks declaratory and injunctive relief, nominal and punitive[5] damages, and the costs of this action. He emphasizes that he does not seek damages for mental or emotional injury.

Defendants Shannon R. Herring, B.G. Baines, J.A. Peters, C.L. Pittman, G.L. Taylor and Vanessa Rhynes filed a joint special report on June 20, 2006 (doc. 43) and

---

[5]Plaintiff seeks $3.00 in nominal damages against defendant Peters due to his participation in three alleged constitutional violations, $2.00 in nominal damages against defendant Taylor and $1.00 against each other defendant. He seeks $25,000 in punitive damages against defendants Finch, Herring, and Baines.

defendant Finch filed his special report on October 30, 2006 (doc. 63).[6]   Plaintiff
filed a consolidated response on April 24, 2007.  (Doc. 93).


**Legal Analysis**

      **A.  General Principles**

            **1.  Summary Judgment Standard**

      On a motion for summary judgment, this court must evaluate the record in the
light most favorable to plaintiff as the nonmovant and grant defendant's motion only
if the record demonstrates that there is no genuine issue of material fact and that
defendant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477
U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986); *Lee v. Ferraro*, 284
F.3d 1188, 1190 (11th Cir. 2002); F.R.C.P. 56.   The court must resolve all disputes and
draw all inferences in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc*., 477
U.S. 242, 255 (1986); see also *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th
Cir.1999).  Summary judgment is improper "[i]f a reasonable fact finder could draw
more than one inference from the facts, and that inference creates a genuine issue
of material fact."  *Cornelius v. Highland Lake*, 880 F.2d 348, 351 (11th Cir. 1989), *cert.
denied*, 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).  An issue of fact is
"material" if it might affect the outcome of the case under the governing law.
*Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d
202, 211 (1986).  It is "genuine" if the record taken as a whole could lead a rational
trier of fact to find for the non-moving party.  *Id.*; *see also Matsushita Electric Indus.
Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538,
552 (1986).   Finally, it is improper for the district court to make credibility
determinations on a motion for summary judgment.  *Miller v. Harget,* 458 F.3d 1251,
1256 (11th Cir. 2006); *Bischoff v. Osceola County,* 222 F.3d 874, 876 (11th Cir. 2000);
*Harris v. Ostrout*, 65 F.3d 912, 916-17 (11th Cir. 1995); *Perry v. Thompson*, 786 F.2d

---

[6]Information set forth in the special reports is set forth as necessary, below.

1093, 1095 (11th Cir. 1986); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

### 2.  Qualified Immunity Standard

Qualified immunity shields government officials from suits against them in their individual capacities for those actions taken within the scope of their discretionary authority that do not violate a clearly established constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct.  *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  To establish qualified immunity, defendants bear the initial burden of showing that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred; once this burden is met, the onus is then on the plaintiff to show that the defendants violated clearly established constitutional law.  *Id.* at 1563-64 (quoting *Zeigler v. Jackson*, 716 F.2d 847, 849 (11th  Cir. 1983).  Plaintiff can satisfy this burden by showing that 1) the laws or rights that were allegedly violated were clearly established at the time defendants acted, and 2) that there is at least a genuine issue of material fact as to whether the defendants actually committed the acts.  *Id.* at 1563; *see also Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996).

In regard to the first burden, the plaintiff must show that the constitutional right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Edwards v. Gilbert*, 867 F.2d 1271, 1273 (11th Cir. 1989). Immunity should be granted if, at the time of the officer's actions, the law was unclear or the officer could have reasonably believed his actions were lawful.  *Id*. If plaintiff's evidence would not support a reasonable jury's finding that the defendants violated plaintiff's constitutional rights, the issue of qualified immunity need not be addressed.  *Campbell v. Sikes*, 169 F.3d 1353, 1361-62 (11th Cir. 1999).

### 3.  Exhaustion Requirement

Failure to have exhausted administrative remedies prior to filing suit is grounds for dismissal of plaintiff's case.  *Johnson v. Meadows,* 418 F.3d 1152, 1159 (11th Cir. 2005);  *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998);  *Higginbottom v. Carter*, 223 F.3d 1259, 1261 (11th Cir. 2000).  The exhaustion requirement applies to all inmate suits about any aspect of prison life, including cases in which plaintiffs seek only monetary damages. *Woodford v. Ngo,* 548 U.S. 81, 126 S.Ct. 2378, 2383, 165 L.Ed.2d 368  (2006); *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); *Booth v. Churner,* 532 U.S. 731, 121 S.Ct.1819, 1825, 149 L.Ed.2d 958 (2001); *Johnson v. Meadows,* 418 F.3d at 1155.

Chapter 33-103 of the Florida Administrative Code In Florida provides for a multi-tiered grievance procedure.  Except in certain limited cases, inmates are to first utilize an informal grievance procedure.  Ch. 33-103.005, F.A.C.  The next level of review is a formal grievance to the warden or assistant warden.  Ch. 33-103.006, F.A.C.  Finally, an inmate may appeal to the Office of the Secretary.  Ch. 33-103.007, F.A.C. In order to exhaust the grievance process, an inmate must avail himself of all levels of review.  The filing of untimely grievances does not satisfy the exhaustion requirement.  *Johnson v. Meadows*, 418 F.3d at 1159.

### B.  Plaintiff's individual claims

#### 1.  Retaliation Claims

It is well established that a prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of his First Amendment rights. See *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir.1997); *Wright v. Newsome*, 795 F.2d 964 968 (11th Cir. 1986); *Adams v. James*, 784 F.2d 1077, 1080 (11th Cir. 1986). Retaliation against an inmate for exercising a constitutional right may be a constitutional violation even if no separate and additional constitutional violation ensues.  *Farrow,*

320 F.3d at 1248; see also *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989) (the retaliatory penalty need not rise to the level of a separate constitutional violation to state a claim); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (an inmate may still present a First Amendment retaliation claim even though complaint alleges facts "that might not otherwise be offensive to the Constitution," such as a search or the confiscation and destruction of nonlegal materials); *Wilson v. Silcox*, 152 F.Supp.2d 1345, 1351 (N.D. Fla. 2001)(citing cases); *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (retaliation based on a prisoner's exercise of his First Amendment rights violates the constitution).  This is because "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising" his constitutional right to free speech, redress of grievances, or similar activity.  *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir. 1997) (quoting *Thomas,* 880 F.2d at 1242).

Although prisoners have a right to be free from retaliatory punishment for the exercise of a constitutional right, *Adams v. James*, 784 F.2d 1077, 1079-80 (11th Cir. 1986); *Bridges v. Russell*, 757 F.2d 1155 (11th Cir. 1985), broad, conclusory allegations of retaliation are insufficient to state a claim under section 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005); *Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1071 (4th Cir. 1993); *Flittie v. Solem*, 827 F.2d 276, 281 (8th Cir. 1987); *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987).  In order to state a claim, the retaliation complaint must identify both the retaliatory conduct and the underlying act that prompted the retaliation.  See *Harbin-Bey*, 420 F.3d at 579; *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002).  A prisoner-plaintiff in a retaliation case must first prove that the conduct which led to the alleged retaliation was constitutionally protected.  *Harbin-Bey,* 420 F.3d at 579; *Rauser v. Horn*, 241 F.3d 330, 333 (3rd Cir. 2001).  He must then "sufficiently allege facts" establishing that the actions taken against him were in retaliation for, for instance, filing lawsuits and accessing the courts, and would not have happened but for the retaliatory motive. *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986); *Harbin-Bey*, 420 F.3d at 579

(also requiring that the retaliatory act "would deter a person of ordinary firmness); *Jackson v. Fair*, 846 F.2d 811, 820 (1st Cir. 1988); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983). Adverse actions taken against an inmate in retaliation for filing grievances state a constitutional claim. *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989). However, plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation. *Crawford-El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 750 (1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)).

A causal connection between the protected conduct and the allegedly retaliatory act may be alleged by a chronology of events that create a plausible inference of retaliation. *See Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988); cf. *McElroy v. Lopac*, 403 F.3d 855 (7th Cir. 2005) (chronology of events is not *required* to state a claim under federal notice pleading standards). For instance, the temporal proximity of an allegedly retaliatory misbehavior report to a grievance filed by the prisoner may serve as circumstantial evidence of retaliation. *Gayle v. Gonyea*, 313 F.3d 677, 683-84 (2nd Cir. 2002); see also *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003)("A prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'").

In considering a plaintiff's allegations, appropriate deference should be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir. 1995) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2299 (1995)). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury . . . " *Crawford-El*, 118 S.Ct. at 1596-97; *Harris*, 65 F.3d at 916-17; *see also Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir. 1995)

(Because claims of retaliation may be easily fabricated, they should be reviewed with skepticism).

### Claim One: Retaliation by defendant Finch

Plaintiff contends that defendant Finch retaliated against him for the exercise of his constitutional rights by conducting a cell shakedown and explicitly informing plaintiff that the reason for the shakedown was plaintiff's grievance writing activity. Plaintiff filed a grievance with the warden asserting that Finch had retaliated against him on behalf of other officers by conducting the cell search.   The warden responded as follows:

> Officer Finch states he observed you standing in your doorway acting in a suspicious manner - possibly being a lookout.  As he entered the wing he heard an inmate make a "siren" sound obviously to warn other inmates he was on the wing.  He states he did shake down your locker and found a bottle of whiteout.  He states he did tell you to meet him behind the curtain (under video surveillance) so he could speak with you privately regarding how you were obtaining the whiteout since it is contraband.  You told him you bought it on the yard from an inmate you refused to identify.  Officer Finch states you brought up the grievance issues accusing him of conducting the search due to grievance filing. Officer Finch stated he did ask you what issue regarding the count procedure you were addressing but again after you volunteered the fact you had filed a grievance against security[.]   Officer Finch denies retaliating against you and stated he was only doing his job.  It is a fact you file grievances regarding a number of issues.  However, filing grievances does not make you immune to security practices to include discipline if necessary.

(Doc. 11, exh. B-3).  Plaintiff appealed, refuting Officer Finch's version of events and offering the names of witnesses who could support his story.  The appeal was denied, with the finding that the response plaintiff had received at the institution level was appropriate and addressed his concerns.  (Doc. 11, exh. B4-B7).

Defendant Finch contends that plaintiff has not established a constitutional violation.  He asserts that plaintiff has failed to establish that his search of plaintiff's

cell was for any purpose other than to advance legitimate penological goals. *Citing Swan v. Smith*, 50 Fed. Appx. 362, 362-363 (9th Cir. 2002) ("A search for evidence of a crime or contraband is for a legitimate penological purpose.") He also asserts that plaintiff has failed to demonstrate that the single search of his cell was retaliatory. *Citing Dixon v. Hastings*, 202 Fed. App. 750, 752 (5th Cir. 2006) (prisoner's allegations of retaliation based on the search of his cell and subsequent disciplinary action did not raise plausible inference that disciplinary action was the result of any retaliatory motive on Officer's part, as prisoner did not allege facts showing that, but for a retaliatory motive, he would not have been disciplined for possessing contraband); *Rustan v. Rasmussen*, 208 F.3d 218, 2000 WL 227987 (8th Cir. 2000) (table, text in WESTLAW) (recognizing that frequently retaliatory cell searches are unconstitutional under the Eighth Amendment finding that the searches described by plaintiff did not rise to that level); *Williams v. Saylor*, 100 F.3d 958, 1996 WL 627757 (6th Cir. 1996) (table, text in WESTLAW) (single allegedly retaliatory cell search did not amount to an egregious abuse of authority or conduct which shocked the conscience in the setting of a maximum security prison).

The cases cited by the defendant are either distinguishable, or not controlling. Plaintiff has provided evidence in this case of the retaliatory nature of the search. Plaintiff states under penalty of perjury in his amended complaint that defendant Finch explicitly told him that the shakedown was "lesson one" on how grievance writers are dealt with at H.C.I., that at H.C.I. writing grievances against staff was not tolerated, that Finch had been instructed by someone to shake down plaintiff's cell and locker and finally that if plaintiff didn't stop writing grievances, it would be staff's turn to file paperwork and plaintiff would end up in disciplinary confinement. (doc. 11 at 8-9). Essentially these same facts were sworn under penalty of perjury when plaintiff filed his administrative grievances against Finch. (Doc. 11, exh. B). Thus, even if the cell search in and of itself was not violative of the constitution,

plaintiff's essentially unrebutted assertions[7] about his interaction with defendant Finch state a First Amendment retaliation claim.   Defendant is not entitled to summary judgment.[8]

### Claims Two and Three: Retaliation by defendants Herring and Baines

Plaintiff contends that these defendants retaliated against him for the exercise of his constitutional rights by writing false disciplinary reports charging plaintiff with disrespect to officials.   Defendants contend in their special report that they are entitled to summary judgment because plaintiff has made no allegations of filing grievances against these individuals themselves, but that he connects their alleged retaliatory animus to his writing of grievances against other corrections officers through self-serving and conclusory allegations.  Defendants cite *Asad v. Crosby* 158 Fed. Appx. 166, 170-171 (11th Cir. 2005) as supporting the proposition that conclusory allegations of an agreement to retaliate are insufficient to state a claim.

Plaintiff's assertion of retaliatory animus in the writing of the two DRs did not arise in a vacuum.   The statements allegedly made by defendant Herring, that he would "think up something" to support charging plaintiff with disrespect, did not specifically inform plaintiff that he was being charged in retaliation for filing grievances or otherwise exercising his First Amendment rights.  However, there is a chain of events that leads to a possible inference of retaliation.  See *Cain*, *supra*. Prior to plaintiff's conversation with Herring, plaintiff was counseled by an Officer Trino, who is not a defendant in this action.  Officer Trino spoke to plaintiff about the consultation plaintiff had with him and Officers Segers and Gillman, when plaintiff

---

[7]Defendant Finch has not submitted an affidavit in support of his special report. Even if he had, however, credibility determinations are not the province of this court considering the procedural posture of this case.

[8]In reaching this conclusion, the court rejects Finch's assertion that plaintiff did not exhaust his administrative remedies as to this defendant as without merit.  It also rejects his assertion that to the extent a constitutional violation was committed, he is entitled to the protection of qualified immunity.  At the time of the alleged incident, the law was clearly established that retaliating against a prisoner for the exercise of this constitutional rights was a violation of the law.

was informed, essentially, that he was to obey the orders of the C.O.'s without asking where a particular rule was written, and that if he did he would be written up for disrespect.  (Doc. 11, ¶¶ 8-9).  Trino told plaintiff that this was merely "the way things are" and that there was nothing plaintiff could do about it.  (Doc. 11, ¶ 38).  Plaintiff was then instructed to report to defendant Herring who wanted "to talk to [plaintiff] about this too."  (Doc. 11, ¶ 39).  The purportedly retaliatory DR then followed.  It could be argued that plaintiff's questioning of Officer Trino about prison rules led to Herring writing the DR, although Herring did not make any explicit statements to that effect.  Nonetheless, plaintiff's assertion or belief that the DR was written out of retaliatory animus is insufficient to support his claim in light of his conviction of the DR in question.

An inmate may not state a claim for retaliation where the "discipline [was] imparted for acts that a prisoner was not entitled to perform." *Cowans v. Warren*, 150 F.3d 910, 912 (8th Cir. 1998) (quoting *Orebaugh v. Caspari*, 910 F.2d 526, 528 (8th Cir.1990) (per curiam)).  Thus, where a prisoner is actually found guilty of a disciplinary infraction, he does not state a claim for retaliation in the writing of the DR.  *Romansky v. Stickman*, 147 Fed.Appx. 310, 2005 WL 2271154 (3rd Cir. 2005); see also *Henderson v. Baird*, 29 F.3d 464, 465, 469 (8th Cir.1994) (a finding that a prisoner violated the rules checkmates his retaliation claim); *Hartsfield v. Nichols,* 511 F.3d 826 (8th Cir. 2008) (citing *Henderson*); *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir.1993) (alleged retaliatory transfer); *Earnest v. Courtney*, 64 F.3d 365, 366-67 (8th Cir. 1995) (per curiam) (assignment to utility squad for gambling not retaliatory); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2nd Cir. 1996); *Wilson v. Phipps*, 149 F.3d 1185 (6th Cir. 1998) (Table, text in WESTLAW).   The record reflects that plaintiff was convicted of the DR after a hearing at which due process was afforded, see below.  Because his punishment was imposed based on an actual violation of prison rules, he thus has not established a constitutional violation.

The same analysis applies to the DR written against plaintiff by defendant Baines. There was no direct evidence of retaliatory animus, and plaintiff was convicted of the DR after a hearing. Therefore, he has not established a constitutional claim for retaliation against either defendant Herring or defendant Baines.

### 2. Due Process Claims

A prisoner's allegation of false disciplinary charges fails to state a claim so long as due process was provided. *See Lagerstrom v. Kingston,* 463 F.3d 621, 625 (7th Cir. 2006); *McPeherson v. McBride,* 188 F.3d 784 (7th Cir. 1999); *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). To the extent plaintiff suggests that his due process rights were violated in the way the hearings were conducted, his contention is without merit. "Prison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). Nevertheless, a disciplinary proceeding whose outcome will "impose[ ] atypical and significant hardship on the inmate" implicating a liberty interest must ensure certain due process rights. The Supreme Court has recognized two circumstances in which a prisoner, who has already been deprived of his liberty in the ordinary sense of the term, can be further deprived of his liberty such that due process is required. *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 2003). The first is when a change in a prisoner's conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court. *Id.* (citing *Sandin v. Conner*, 515 U.S. 472, 484, 115 S.Ct. 2293, 2300, 132 L.Ed.2d 418 (1995); and *Vitek v. Jones*, 445 U.S. 480, 492-93, 100 S.Ct. 1254, 1263-64, 63 L.Ed.2d 552 (1980) (holding that a prisoner is entitled to due process prior to being transferred to a mental hospital)). The second circumstance arises when the state has consistently given a certain benefit to prisoners, for instance, via statute or

administrative policy, and the deprivation of that benefit "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Bass* 170 F.3d at 1318 (citing *Sandin*, 515 U.S. at 484, 115 S.Ct. at 2300; and *Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2976, 41 L.Ed.2d 935 (1974) (prisoners may not be deprived of statutory "good-time credits" without due process)).  In this case, as a result of his conviction on each DR, plaintiff was placed in disciplinary confinement for 30 days, but did not forfeit any accrued gain time.  (Doc. 43 at 21). Thus, defendants argue, his case did not present a sufficient liberty interest to invoke the due process protections of *Wolff*.  *Sandin*, *supra*;  *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) (an inmate has no liberty interest in being confined in the general population rather than in the more restrictive atmosphere of administrative or disciplinary confinement).  To the extent that plaintiff complains about his placement in administrative confinement before his disciplinary conviction, he likewise fails to establish a constitutional violation. The Eleventh Circuit has found that placement in administrative confinement for two months did not constitute deprivation of a constitutionally protected liberty interest as defined in *Sandin*.  *See Rodgers v. Singletary*, 142 F.3d 1252, 1253 (11th Cir. 1998).

The due process rights that must be afforded to inmates whose liberty interests are affected by prison disciplinary proceedings, ie. those subjected to something other than administrative or disciplinary confinement, are: (1) advance written notice of the claimed violation, (2) an opportunity to call witnesses and present documentary evidence in his defense when doing so would not unduly interfere with institutional safety or correctional goals, and (3) a written statement by the fact finders as to the evidence relied upon and the reasons for the disciplinary action taken.  *Wolff*, 418 U.S. at 563-67, 94 S.Ct. at 2978-80; *Bass v. Perrin*, 170 F.3d 1312, 1318 (11th Cir. 2003);  *Asad v. Crosby,*  158 Fed.Appx. 166, 172-173, (11th Cir. 2005).  Plaintiff's punishment was only a period of disciplinary confinement and as such even the limited *Wolff* due process protections were not available to him.  Still,

the record clearly reflects that plaintiff had advance notice of the claimed violations. (Doc. 43, exh. D & J; doc. 11, exh. C & J).  He had the opportunity to and did make a statement regarding the charged infractions.  (Doc. 43, exh. F & L).  He had the opportunity to call witnesses during the investigation.  (Doc. 43, exh. G & M).  And, he had the opportunity to call witnesses at the hearing, although the only witness he listed, defendant Peters, was not called as he was not present during the incident and was intended as a "character witness."  (Doc. 43, exh. G).  In regard to the third requirement, the Supreme Court has held that the district court need only inquire into whether there is "some evidence" upon which the disciplinary team could base its decision.  *Superintendent v. Hill*, 472 U.S. 445, 455, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985); see also *Wiliams v. Fountain*, 77 F.3d 372, 374-75 (11th Cir. 1996); *Hartsfield v. Nichols*, 511 F.3d 826 (8th Cir. 2008).  Reliance upon the observations of a correctional officer can alone be sufficient to meet the evidentiary standard.  *Hill,* 472 U.S. at 456-57, 105 S.Ct. at 2774-75; *Hartsfield*, 511 F.3d 826 ("a report from a correctional officer, even if disputed by the inmate and supported by no other evidence, legally suffices as 'some evidence' upon which to base a prison disciplinary violation, if the violation is found by an impartial decisionmaker."); *Hrbek v. Nix*, 12 F.3d 777, 781 (8th Cir. 1993) (same).  Finally, plaintiff was provided a written report of the hearing that set forth the basis for the decision.  (Doc. 11, exh. E).  Thus, even assuming for sake of argument that he was entitled to due process as set forth in *Wolff*, he has not established a due process violation.  Plaintiff's individual due process claims against defendants Peters, Pittman, Rhynes and Taylor reach beyond what is outlined in *Wolff*.

### Claim Four:  Defendant Peters presiding over disciplinary hearing

Plaintiff asserts that defendant Peters violated his constitutional rights when he presided over the hearing on the DR written by defendant Herring, when Peters was listed as a witness in the proceedings.  Defendants assert that plaintiff has

failed to administratively exhaust this claim, as his grievances on this issue were returned without action.  (Doc. 11, exh. H).

Plaintiff's exhibit H to the amended complaint contains the grievances pertaining to this issue. Plaintiff's request for administrative remedy was returned without further processing due to alleged non-compliance with 33-103.014(n), F.A.C. (Doc. 11, exh. H 1-2).  Plaintiff re-filed his request for administrative remedy, arguing that the response to his first request had been legally incorrect.  It was also returned without further processing.  (Doc. 11, exh. H 3-4).  His appeal was returned without action as untimely. (Doc. 11, exh. H 5-6).  As noted above, an untimely administrative grievance does not satisfy the exhaustion requirement, *Johnson v. Meadows*, 418 F.3d 1152, 1157 (11th Cir. 2005), and therefore plaintiff has not exhausted his administrative remedies as to this claim.

With respect to the merits of this claim, plaintiff is correct that the Supreme Court's decision in *Wolff* requires an impartial hearing board, that is, a member of the disciplinary board hearing the case may not participate in the case as an investigative or reviewing officer.  *Wolff*, 418 U.S. at 539, 572 n. 20.  However, in this case defendant Peters was neither an investigative or reviewing officer nor an eyewitness to the event. His testimony was intended to corroborate plaintiff's assertions of retaliation.  See *Ramer v. Kerby*, 936 F.2d 1102, 1104 (10th Cir. 1991) ("[A]n assertion that a witness' testimony is 'merely corroborative' generally is insufficient to justify denial of an inmate's request to call witnesses when that inmate faces a credibility problem trying to disprove the charges of a prison guard." (citation omitted)).   If anything, it would appear that Peters presence on the reviewing panel and his familiarity with plaintiff's allegations would have inured to plaintiff's benefit, as Peters was certainly personally aware of plaintiff's suspicions of impending retaliatory conduct even before the incident with Herring took place.

### Claim Five: Peters and Taylor presiding over DR hearing

Plaintiff next contends that defendants Peters and Taylor violated his constitutional right to an impartial hearing panel when they presided over his disciplinary hearings.[9]  The violation occurred, according to plaintiff, because 50 percent of each DR team was under the immediate supervision and/or control of the individuals who authorized the DR to be written and processed.

Plaintiff explains that in order for an officer to write a DR charging in inmate with a rule infraction, the officer must first get approval from the shift officer in charge, a captain or higher.  After receiving approval, the DR is written and given to an investigating officer.  This officer serves the DR on the inmate, asks the inmate if he wishes to make a written statement or call any witnesses, collects any witness statements and prepares an investigative report. The DR and investigative report are given to the Chief of Security, a colonel, for approval and processing, and then are given to the DR hearing team.  Plaintiff emphasizes that before an inmate even appears before a disciplinary team the DR has already been approved by a captain and the institution's colonel.  (Doc. 93 at 42-43).  Thus, one of the members of each DR hearing team is under the immediate supervision and control of the officials that previously approved the writing and processing of the DR at issue.   Plaintiff therefore concludes that all DR hearing teams, including the ones on which Peters and Taylor sat, are not impartial.

Other than the fact that Peters and Taylor were security personnel under the rank of Captain or Colonel, plaintiff offers no suggestion that they were specifically biased and thus not the "impartial decisionmakers" identified in *Wolff*.  The Supreme Court in *Wolff* did not precisely define what constitutes an "impartial decisionmaker."  The Tenth Circuit has held that "[a]n impartial decisionmaker is a fundamental requirement of due process" and "should be decided on a case-by-case

---

[9]Peters presided over the hearing involving the DR written by defendant Herring, and Taylor presided over the disciplinary hearing involving the DR written by defendant Baines.

basis." *Gwinn v. Awmiller*, 354 F.3d 1211, 1220 (10th Cir. 2004) (quotations omitted). The *Wolff* Court found a panel comprised of the Associate Warden Custody, the Correctional Industries Superintendent and the Reception Center Director to be sufficiently impartial to satisfy the requirements of due process. Other than as outlined in the preceding section, plaintiff has not suggested that either defendant Taylor or defendant Peters was involved "in the investigation or prosecution of the particular case, or ... had any other form of personal involvement in the case." *See Wolff*, 418 U.S. at 592, 94 S.Ct. 2963 (Marshall, J., concurring). The fact that they were outranked by individuals who approved the writing of the DR is not conclusive evidence of bias sufficient to state a constitutional violation. Any alleged bias must be evident from the record and cannot be based on speculation or inference. See *Nash v. Auburn University*, 812 F.2d 655, 665 (11th Cir.1987) (citations omitted). Even the presence on the panel of individuals who have been named in previous lawsuits by the prisoner whose conduct is at issue does not necessarily violate the right to an impartial decisionmaker. See *Adams v. Gunnell*, 729 F.2d 362, 370 (5th Cir. 1984)(cited in *Frank v. Larpenter*, 234 F.3d 706 (5th Cir. 2000) (table, text in WESTLAW); but see *Malek v. Camp*, 822 F.2d 812, 816 (8th Cir. 1987) (disciplinary committee might be biased where the defendant filed a suit against the chairman on behalf of another inmate days prior to hearing); *Redding v. Fairman*, 717 F.2d 1105, 1113 (7th Cir. 1983) (prison adjustment committee members that are defendants in unrelated lawsuits could be biased, remanding to evaluate particular circumstances); *Merritt v. De Los Santos*, 721 F.2d 598, 601 (7th Cir. 1983) ("requirement of impartiality mandates the disqualification of an official who is directly involved in the incident or is otherwise substantially involved in the incident but does not require the disqualification of someone tangentially involved."); *Rhodes v. Robinson*, 612 F.2d 766 (3rd Cir. 1979) (only officials who have a direct personal or otherwise substantial involvement in the circumstances of the charge are prohibited

from sitting on the disciplinary body).  The fact that the DR hearing teams ruled against the plaintiff is not proof of partiality.[10]

### Claim Six: Peters and Pittman failed to give plaintiff credit for time served

Plaintiff claims that Peters and Pittman who comprised the disciplinary hearing panel for the DR written by defendant Herring knew that plaintiff had been placed in administrative confinement due to the pending disciplinary action and therefore violated his rights when they did not credit the time he spent in confinement before the hearing towards his 30 day sentence.  Plaintiff states that he served seven days in "administrative" confinement before the disciplinary hearing. He complains that this administrative confinement is essentially the same as disciplinary confinement because of the loss of privileges attendant to it, and that prison officials could have just as easily left him in open population pending the hearing.  (Doc. 93 at 41).  He asserts that the defendants have "never" credited an inmate at the disciplinary hearing with the time spent in administrative confinement. Plaintiff does not cite a regulation that requires that he receive such credit.  *Cf. Boles v. Weist*, 849 F.2d 608, 1988 WL 58866 (6th Cir. 1988) (plaintiff was not entitled to have his disciplinary sentence be credited with time served in detention prior to his disciplinary hearing because the applicable Michigan administrative code regulation only allows for credit for time served in punitive confinement).  Rule 33-601.308(l) of the Florida Administrative Code provides that when an inmate has been placed in administrative confinement pending a disciplinary hearing and the team subsequently recommends a term of disciplinary confinement, the disciplinary team "shall *consider* the time served in administrative confinement in determining the total number of days of recommended disciplinary confinement."  (Emphasis supplied).  As plaintiff was advised in response to his grievance on this issue, there

---

[10]In addition, plaintiff's claim against Lt. Peters has not been administratively exhausted.  (Doc. 11, exh. I) The procedural progression of the claim was identical to his attempt to exhaust claim four–his appeal to the Secretary was returned without action as untimely.  (Doc. 11, exh. I-6).

is no "mandate" to award time spent in administrative confinement towards his disciplinary confinement penalty.  (Doc. 11, exh. M-4).  In this case, the maximum penalty for plaintiff's infraction was 30 days disciplinary confinement and 60 days loss of gain time.  Rule 33-601.314 (1-4), F.A.C.  Plaintiff did not lose any gain time, and he was sentenced to 30 days of confinement.   His confinement sentence does not affect the ultimate length of his incarceration, and therefore, no liberty interest is implicated under *Sandin*.  *Hewitt v. Helms*, 459 U.S. 460, 466, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983) (inmate has no liberty interest in being confined in the general population rather than in the more restrictive atmosphere of administrative or disciplinary confinement).

### Claim Seven: Taylor and Rhynes failed to produce evidence

Plaintiff claims that defendants Taylor and Rhynes, who presided over the disciplinary hearing panel involving the DR written by defendant Baines, violated his rights when they failed to produce evidence that he specifically requested be produced.   Plaintiff states that he asked that the video tape from the video surveillance camera that faced his cell be presented at the hearing, because the contents of the tape would have exonerated him by showing he was not at the door of his cell during the verbal exchange with Baines.  Plaintiff grieved this issue after the disciplinary hearing and the response indicated that the videotape did not substantiate his assertion.  (Doc. 11, exh. L).

"Chief among the due process minima outlined in *Wolff* was the right of an inmate to call and present witnesses and documentary evidence in his defense...." *Ponte v. Real*, 471 U.S. 491, 495, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985);  *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 814 (10th Cir. 2007).  But this right is not absolute; rather it is "circumscribed by the necessary 'mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application.'" *Baxter v. Palmigiano*, 425 U.S. 308, 321, 96 S.Ct.

1551, 47 L.Ed.2d 810 (1976) (quoting *Wolff*, 418 U.S. at 556, 94 S.Ct. 2963).  In *Wolff*, the Supreme Court drew no distinction between the standard prison officials may use to refuse requests by an inmate to introduce documentary evidence and that applying to requests to present witness testimony: "the inmate ... should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."  418 U.S. at 566, 94 S.Ct. 2963.  And, as with a prisoner's request to call a particular witness, prison officials are required to consider a request for documentary evidence on an individualized basis.  *Howard*, 487 F.3d at 813 (citation omitted).  While a disciplinary board need not give a reason for the denial of an inmate's request for potentially exculpatory evidence contemporaneously with the hearing, it may later be required to provide reasons, and demonstrate that the "reasons are logically related to 'institutional safety or correctional goals.'"  *Ponte v. Real*, 471 U.S. 491, 497, 105 S.Ct. 2192, 85 L.Ed.2d 553 (1985).  The defendants in this case have not asserted that producing the videotape would have been "unduly hazardous to institutional safety or correctional goals."  *Wolffe*, 418 U.S. at 566, 94 S.Ct. 2963; *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 814 (10th Cir. 2007).

The Tenth Circuit recently held, in a case brought pursuant to 28 U.S.C. § 2241, that the refusal of prison officials to produce and review a videotape that a prisoner asserted would refute disciplinary charges against him violated his due process rights to present documentary evidence in his own defense.  *Howard v. U.S. Bureau of Prisons*, 487 F.3d 808, 814 (10th Cir. 2007); see also *Gibbons v. Higgins*, 73 F.3d 364 (7th Cir. 1995) (Table, text in WESTLAW) (applying harmless error analysis to alleged due process violation when inmate's own admission made the withholding of the tape harmless); *Malik v. Tanner*, 697 F.Supp. 1294, 1300 n. 7 (S.D.N.Y.1988) (if inmate had requested videotape of cell block prior to hearing, it would have been a violation of due process to refuse to consider the videotape); cf. *Godlock v. Fatkin*,  84 Fed.Appx. 24, *28, 2003 WL 22954301, **3 (10th Cir. 2003)

(failure to preserve videotape of alleged battery did not violate due process where there was no showing of bad faith; if prisoner would not have been constitutionally entitled to video for a criminal offense he was not so entitled for a prison disciplinary hearing).   In *Howard*, the prison officials asserted that the plaintiff had failed to demonstrate that any videotape documenting a physical altercation between plaintiff and another inmate existed, and that in any event its presentation would be "needlessly cumulative."   487 F.3d at 814.   The court found it should have been produced.[11]

A critical difference between this case and *Howard* is whether the inmates had a liberty interest in the "deprivation" resulting from the DR proceedings.   As a result of the charges from inmate Howard's DR the disciplinary hearing officer disallowed previously accumulated good-time credit, as well as recommended disciplinary segregation and a disciplinary transfer, suspended various privileges, and impounded Mr. Howard's personal property.   Therefore, because Howard lost gain time and his sentence was thus "extended," a liberty interest was clearly implicated.   In the case at bar, however, plaintiff was sentenced only to a term of disciplinary confinement of 30 days on this charge; thus, his discipline "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest," and due process concerns were not implicated.   *Sandin*, 515 U.S. at 486, 115 S.Ct. at 2301.   See *Rodgers v. Singletary*, 142 F.3d 1252 (11th Cir. 1998) (dismissing inmate's claim that he was denied due process when he was wrongfully confined in administrative confinement for two months; inmate failed to show that he was deprived of a constitutionally protected liberty interest as defined in *Sandin*); *see e.g.*, *Ledford v. Johnson*, 2000 WL 284301, at *5-6 (S.D. Ala. 2000) (dismissing inmate's due process challenge to disciplinary charge resulting in disciplinary

---

[11]In Mr. O'Bryant's case, the videotape was reviewed by at least one member of corrections staff who concluded in response to plaintiff's grievance not that it was cumulative, but that it did not support his claim. (Doc. 11, exh. L-2).

sanctions even though undisputed facts provided basis for finding that procedural due process was not provided; inmate failed to show that he was deprived of a constitutionally protected liberty interest where the disciplinary sanctions (confinement in disciplinary segregation and chain gang for 35 days and loss of CIT status) did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest); *Malchi v. Thaler*, 211 F.3d 953, 959 (5th Cir. 2000) (holding that inmates have no constitutional right to a particular classification status).

### C.  Punitive Damages

Generally, punitive damages may be recovered for constitutional violations without a showing of compensable injury.  *Searles v. Van Bebber*, 251 F.3d 869, 880 (10th Cir. 2001) (citing *Alexander v. Riga*, 208 F.3d 419, 430 (3d Cir.2000) ( "[B]eyond a doubt, punitive damages can be awarded in a civil rights case where a jury finds a constitutional violation, even when the jury has not awarded compensatory or nominal damages."), cert. denied, 531 U.S. 1069, 121 S.Ct. 757, 148 L.Ed.2d 660 (2001); see also *Louisiana ACORN Fair Housing, Inc. v. LeBlanc*, 211 F.3d 298, 300-304 (5th Cir.2000) (collecting cases)).  The parties agree that the Eleventh Circuit has yet to issue a definitive ruling on whether punitive damages are recoverable under the PLRA in a situation such as is presented in this case.  See *Harris v. Garner*, 190 F.3d 1279 (11th Cir. 1999), vacated by 197 F.3d 1059, reinstated in part on rehearing, 216 F.3d 970 (11th Cir. 2000), and cert. denied 532 U.S. 1065, 121 S.Ct. 2214, 150 L.Ed.2d 208 (2001); *Boxer X v. Donald*, 169 Fed. Appx. 555, 558 n. 1 (11th Cir. 2006); *Smith v. Allen*, 502 F.3d 1255 (11th Cir. 2007).[12]  Other circuits have found that such damages are recoverable.  See *Searles v. VanBebber*, 251 F.3d 869, 880 (10th Cir. 2001) (PLRA does not prohibit recovery of punitive damages for violations of prisoners' constitutional rights); *Allah v. Al-Hafeez*, 226 F.3d 247 (3rd Cir. 2000)

---

[12]The defendant suggests certifying this question to the Eleventh Circuit for interlocutory review.

(same).  Therefore, the court will not recommend dismissal of plaintiff's punitive damages claim at this juncture.

Accordingly, it is respectfully RECOMMENDED:

That the motion for summary judgment of defendants Herring, Baines, Rhynes, Peters, Pittman, and Taylor (doc. 43) be GRANTED.

That the motion for summary judgment of defendant Finch (doc. 63) be DENIED and this case be referred to the undersigned for further proceedings with respect to plaintiff's claim against defendant Finch.


At Pensacola, Florida, this 15th day of February, 2008.



/s/ *Miles Davis*

**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).