**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION**

**THOMAS C. O'BRYANT,**
    **Plaintiff,**

**vs.**                                       **Case No: 5:05cv111/LAC/MD**

**M.D. FINCH, et al.,**
    **Defendants.**

## REPORT AND RECOMMENDATION

This case filed pursuant to 42 U.S.C. § 1983 is before the court upon defendant Finch's second motion for summary judgment, (doc. 118), filed with leave of court, and plaintiff's response thereto. (Doc. 123).

### Background

Plaintiff Thomas O'Bryant is serving a life sentence in the custody of the Department of Corrections and is currently incarcerated at Mayo Correctional Institution. He initially brought this action in May of 2005 pursuant to 42 U.S.C. § 1983 to redress alleged violations of his First Amendment Rights. In his amended complaint (doc. 11) (henceforth "complaint"),[1] plaintiff named seven defendants: M.D. Finch, Shannon R. Herring, B.G. Baines, J.A. Peters, C.L. Pittman, G.L. Taylor and Vanessa Rhynes. Defendants filed special reports (doc. 43 & 63) which the court construed as motions for summary judgment after responses and the filing of supplemental authority. (Doc. 93, 95, 96,97, 100). Summary judgment was granted

---

[1]The allegations in this complaint were sworn under penalty of perjury on October 14, 2005.

on March 12, 2008 in favor of all defendants with the exception of defendant Finch. (Doc. 108). Defendant Finch moved for and was granted leave to file a second motion for summary judgment over plaintiff's objection (doc. 112, 113, & 114). After two extensions of time he has done so (doc. 118), and plaintiff has responded. (Doc. 123).

The lone remaining claim against defendant Finch relates to a cell search he conducted on December 13, 2004. Plaintiff contends that this search was conducted by Finch in retaliation for plaintiff's filing grievances against other corrections officers and to deter him from filing future grievances. As relief, plaintiff seeks court costs, nominal damages of $1.00 and $25,000 in punitive damages.

In plaintiff's complaint he describes a consultation that he had on October 27, 2004 with a Corrections Officer Trino, who was not named as a defendant in this action. C.O. Trino, upon being questioned by the plaintiff about the consultation, called for a supervisor and Sgt. Segers, Officer Gillman, and Officer Langford reported to the scene. Sgt. Segers stood over plaintiff and told him words to the effect of "Whenever one of my officers tells you something's a rule, it's a rule. Don't ever ask where a rule is." (Complaint ¶ 8). Officer Gillman then told plaintiff words to the effect of "If you ever ask me where a rule is, I'll say you called me a dumbass, or I'm stupid, or that I've got my head up my ass. I'll lock you up for disrespect." (Complaint ¶ 9). Plaintiff states that he filed informal and formal grievances against Segers and Gillman, but the grievances went unanswered. (Complaint ¶¶ 11, 12, 13, 14). On December 10, 2004, after having received no response from the warden he filed a grievance to the DOC Central Office. Later the same day Sgt. Segers came to plaintiff's cell, threw plaintiff's formal grievance on his bunk and left. (Complaint ¶¶ 14, 15).

Three days later, on December 13, 2004, defendant Finch came to plaintiff's cell and told plaintiff that he was going to search the cell because of the grievances plaintiff had filed against Segers and Gillman, and that the "shakedown" was "lesson one" in how grievance writers were dealt with at H.C.I. (Complaint ¶¶ 16, 17, 18).

Plaintiff was instructed to meet Finch "behind the curtain[2] for lesson two about writing grievances" at H.C.I. (Complaint ¶ 19). Plaintiff states that he was essentially told by Finch that individuals who wrote grievances against staff were not looked upon favorably at H.C.I., that the shakedown was a result of plaintiff's grievance activity, and that if he continued to write grievances the staff would start writing DR's against plaintiff and he would end up in disciplinary confinement. (Complaint ¶¶ 21-26). Plaintiff filed a grievance of reprisal against Finch on the same day. (Complaint ¶ 28). Plaintiff reported this conversation to his mother, who told him she would call defendant Peters the next morning. (Complaint ¶ 27). Plaintiff was called to Lt. Peters' office on December 14, 2004 to discuss what had happened. Peters told him he would speak to the staff involved. (Complaint ¶¶ 29-33).

Defendant Finch has submitted a sworn declaration in support of the motion for summary judgment in which he states: "I deny all of the allegations against me made by O'Bryant. I did not make the statements that O'Bryant alleges I made. I am not aware of any staff being involved in any retaliation towards O'Bryant. (Doc. 118, exh. B, ¶ 3). Finch admits to having searched plaintiff's cell on December 13, 2004 while he was on duty in H-dorm. (*Id.* ¶ 4). He explains that cell searches are done routinely but on an irregular basis for security and safety reasons and are conducted at the discretion of security staff. (*Id.*) In accordance with DOC Procedure 602.018, searches of cell, living quarters and property are conducted in open population wings on no less than 25% of the inmate population per month and are dispersed throughout the shifts. (*Id.*). Finch states that when he entered plaintiff's wing on that day he heard an inmate make a "siren" sound which alerts other inmates that security was entering the wing. (*Id.*) Finch explains that he observed plaintiff at his cell door "acting as if he might be a lookout" and "[t]herefore [he] conducted a cell search to check for contraband." (*Id.*) Officer Ernest Andrews accompanied Finch

---

[2]According to plaintiff, the "curtain" separates the disciplinary confinement wing of H-dorm from the open population wing. (Complaint ¶ 20).

*Case No: 5:05cv111/LAC/MD*

to search plaintiff O'Bryant's cell.  Finch found an unauthorized bottle of whiteout during the search of plaintiff's cell, but no other contraband.

Whiteout is not authorized for possession by the inmates and therefore is not available in the canteen.  (*Id.* ¶ 5).  Finch suspected that O'Bryant could have obtained the whiteout from staff, and therefore asked him to step behind the curtain to speak with him about the source of the whiteout out of earshot of the other inmates. (*Id.*)  Upon questioning, plaintiff told Finch he had purchased the whiteout from another inmate, but he refused to identify the inmate.  (*Id.*)

During the conversation behind the curtain, Finch states that O'Bryant accused Finch of conducting the search because of grievances he had filed against security.  (*Id.* ¶ 6).  Finch asserts he had been unaware of these grievances until plaintiff mentioned them, and denied that he conducted the search to harass inmate O'Bryant for filing grievances or for any reason other than fulfilling his duties and responsibilities as a security officer.  (*Id.*).  Finch asserts it was plaintiff's behavior at the doorway to his cell that attracted Finch's attention and formed the basis for conducting the search.  (*Id.*)  He reiterates that he did not retaliate in any fashion against plaintiff for filing grievances or lawsuits.  (*Id.* ¶ 7).

Officer Ernest Andrews has also submitted a sworn declaration in which he states that he assisted Finch with the search of O'Bryant's cell after O'Bryant appeared to be acting as a lookout at the door of his cell.  (Doc. 118, exh. C). Andrews' affidavit contains the same recitation of procedure with respect to searches that is contained in the Finch affidavit.  Andrews further states that he has never heard Finch threaten or harass O'Bryant about filing grievances or lawsuits, either during the search or otherwise.  He asserts that the search was conducted as part of routine searches performed in open population wings, and that had Finch not conducted the search, Andrews would have done so based upon O'Bryant's observed behavior.  (*Id.*).

Plaintiff submitted an affidavit in conjunction with his response that in many respects re-states what was set forth in his complaint.  He asserts that on Monday

December 13, 2004, Officer Finch came to his cell at approximately 11:30 a.m. and informed plaintiff that he was going to search plaintiff's cell because of grievances plaintiff had written against Officers Segers and Gillman. (doc. 123, exh. A ¶ 15). Finch told plaintiff that the "shake down" was "lesson one" on how grievance writers were dealt with at Holmes Correctional Institution. (*Id.*). Finch finished searching plaintiff's property and left things strewn about plaintiff's cell, telling plaintiff to put his things away and meet Finch "behind the curtain for lesson two about writing grievances" at HCI. (*Id.* ¶ 16). Once plaintiff was behind the curtain, Finch told him words to the effect that he did not know how they operated at other institutions plaintiff had been to, but at HCI they did not tolerate inmates writing grievances against staff. (*Id.* ¶ 18). Finch also told plaintiff that Finch had been instructed by someone "up front" to "shake down" plaintiff's cell and property. (*Id.*) Finch advised plaintiff that it was time for him to stop filing grievances, that if he did not it would be staff's turn to file "paperwork" (ie. disciplinary reports), that there would be a bunch of "paperwork," and plaintiff would be "back there," (ie. in disciplinary confinement). (*Id.*)

In his affidavit, plaintiff specifically denies having accused Finch of conducting the cell search because of plaintiff's grievance writing, stating that to the contrary, it was Finch who specifically told the plaintiff that Finch was conducting the search for that reason. (*Id.* ¶ 19). Plaintiff also denies that he was standing at the door to his cell when Finch entered the wing, stating that he was lying on his bunk reading. (*Id.* ¶ 20). Plaintiff admits having been in possession of the bottle of contraband whiteout discovered by Finch, but states that Finch did not ask him any questions about the origin of the whiteout, either during his search of plaintiff's property or during their conversation behind the curtain. (*Id.* ¶ 21).

Plaintiff further asserts that it is "not true that Officer Andrews would have searched [plaintiff's] cell if Finch had not done so" based upon plaintiff's behavior because plaintiff was lying on his bed reading, and could not be observed by either Finch or Andrews until they approached his cell. (*Id.* ¶ 27). In fact, according to

plaintiff, Officer Andrews left the cell and exited the wing when Finch began his search. (*Id.* ¶ 26). Plaintiff also states that Finch and Andrews are not being truthful when they state that an inmate alerted the wing about their entry onto the wing by making a "siren" sound, as no such sound was made when the officers entered the wing. (*Id.* ¶ 28). Finch, according to plaintiff, is untruthful in his account of his search of plaintiff's property and cell and the conversation that the men had both during the search and "behind the curtain." (*Id.* ¶ 32). Plaintiff recounts that Finch told him that if he filed a grievance against Finch that plaintiff would go to confinement, and that he did file a grievance and, as promised, he did go to confinement. (*Id.* ¶ 33).

With respect to the deterrent impact of cell searches plaintiff states in his affidavit:

> **34. The knowledge that an officer will search an inmate's cell if he files a grievance is an effective deterrent from filing grievances. I have seen inmates not file a grievance because they believed they would have their property searched if they did. I have seen inmates file a grievance and not proceed with subsequent levels of the grievance process because a correctional officer searched their property and told the inmate to sop (sic). Not only have I seen this with other inmates, I have also experienced this myself. At Hol.C.I. as well as other institutions, I have not pursued grievances at times because I knew I would be subjected to a cell search if I did.**

> **35. Because of my incarceration, I, like most prisoners, have very little personal assets and property. What meager possessions I do have become very important and significant to me. This is true of all inmates I know. My possessions take on such significance to me that I refer to my locker where they are stored as my "house". This is a common thing among the prison population. Because of the importance of my property, when a prison official searches it with, or without justification, it leaves me feeling violated, demoralized, insignificant, and angry. The search becomes an even more demeaning experience when it is done simply because I engaged in an activity I have a right to do, such as file grievances.**

(Doc. 123, exh. A, ¶¶ 34 & 35).  Plaintiff has submitted the affidavits of two other inmates to corroborate his statement about the deterrence value of a cell search. Inmate Mark Kohut states that he is an inmate at Mayo Correctional Institution[3] and is a person of ordinary firmness who has filed grievances during his period of incarceration.  (Doc. 123, exh. E).  Mr. Kohut states that the knowledge that a correctional officer will search an inmate's property and cell if the inmate files a grievance against prison officials is an effective deterrent against filing grievances and that on many occasions he has "seen inmates stop pursuing grievances because they were searched due to the grievances and told to stop by prison officials."  He personally admits that he has stopped pursuing his administrative remedies against prison officials after having his property and cell searched after filing a grievance, and attests that the knowledge that he may be subject to search if he files a grievance against prison officials has prevented him from pursuing such grievances.  (*Id.*).

Inmate Brandon Johnson states that he is a person of average or above average firmness who spent 8 years in the military.  (Doc. 123, exh. F).  Mr. Johnson, who is currently serving a life sentence, states that the knowledge or belief that his property and cell would be searched by prison officials if he filed a grievance against staff has prevented him from filing grievances.  (*Id.*)

Plaintiff has also submitted the affidavits of his cellmate at the time of the events in question, Gregory Thomas, and an inmate witness to the events, Fredrico Flemming.  In Thomas' affidavit, dated June 28, 2005,  Thomas states that he was in the cell he shared with plaintiff when Officer Finch approached.  (Doc. 123, exh. B). He avers that plaintiff had not been standing at his cell doorway or in the front of his cell at any time during that day.  He also states that Finch told him to leave before beginning the search.  (*Id.*)

---

[3]Although the affidavit was signed on July 5, 2008, the court was unable to locate this inmate in DOC records by either his name or by the inmate number reflected both in and at the conclusion of the affidavit.

*Case No: 5:05cv111/LAC/MD*

In Flemming's affidavit dated December 13, 2004, Flemming states that he was standing directly in front of plaintiff's cell on the date in question when Finch said to plaintiff words to the effect of "So, you want to write grievances against Sergers (sic) and Gillman, huh.  Here's lesson one about how we handle grievance writers at Holmes C.I." (Doc. 123, exh. D).   Flemming observed Finch searching plaintiff's property and throwing it around, then heard him instruct plaintiff to put the property back in his locker and go behind the sallyport curtain so plaintiff could "learn lesson two about grievance writing at Holmes C.I."  (*Id.*)

## Legal Analysis

### A.  General Principles

#### 1.  Summary Judgment Standard

On a motion for summary judgment, this court must  evaluate the record in the light most favorable to plaintiff as the nonmovant and grant defendant's motion only if the record demonstrates that there is no genuine issue of material fact and that defendant is entitled to judgment as a matter of law.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265, 273 (1986);  *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002); F.R.C.P. 56.  The court must resolve all disputes and draw all inferences in the nonmovant's favor.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); see also *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1315 (11th Cir.1999).  Summary judgment is improper "[i]f a reasonable fact finder could draw more than one inference from the facts, and that inference creates a genuine issue of material fact."  *Cornelius v. Highland Lake,* 880 F.2d 348, 351 (11th Cir. 1989), *cert. denied,* 494 U.S. 1066, 110 S.Ct. 1784, 108 L.Ed.2d 785 (1990).  An issue of fact is "material" if it might affect the outcome of the case under the governing law.  *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (1986).*  It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party.  *Id.*; *see also Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552

(1986). Finally, it is improper for the district court to make credibility determinations on a motion for summary judgment. *Miller v. Harget,* 458 F.3d 1251, 1256 (11th Cir. 2006); *Bischoff v. Osceola County,* 222 F.3d 874, 876 (11th Cir. 2000); *Harris v. Ostrout*, 65 F.3d 912, 916-17 (11th Cir. 1995); *Perry v. Thompson,* 786 F.2d 1093, 1095 (11th Cir. 1986); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1531 (11th Cir. 1987).

### 2. Qualified Immunity Standard

Qualified immunity shields government officials from suits against them in their individual capacities for those actions taken within the scope of their discretionary authority that do not violate a clearly established constitutional right of which a reasonable person would have known given the circumstances and information possessed by the official at the time of the conduct. *Harlow v. Fitzgerald,* 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). To establish qualified immunity, defendants bear the initial burden of showing that they were acting within the scope of their discretionary authority when the allegedly wrongful acts occurred; once this burden is met, the onus is then on the plaintiff to show that the defendants violated clearly established constitutional law. *Id.* at 1563-64 (quoting *Zeigler v. Jackson,* 716 F.2d 847, 849 (11th Cir. 1983). Plaintiff can satisfy this burden by showing that 1) the laws or rights that were allegedly violated were clearly established at the time defendants acted, and 2) that there is at least a genuine issue of material fact as to whether the defendants actually committed the acts. *Id.* at 1563; *see also Johnson v. Clifton*, 74 F.3d 1087, 1091 (11th Cir. 1996).

In regard to the first burden, the plaintiff must show that the constitutional right was "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Edwards v. Gilbert,* 867 F.2d 1271, 1273 (11th Cir. 1989). Immunity should be granted if, at the time of the officer's actions, the law was unclear or the officer could have reasonably believed his actions were lawful. *Id.*

**If plaintiff's evidence would not support a reasonable jury's finding that the defendants violated plaintiff's constitutional rights, the issue of qualified immunity need not be addressed.** *Campbell v. Sikes*, 169 F.3d 1353, 1361-62 (11th Cir. 1999).

### 3. Retaliation

It is well established that a prisoner's constitutional rights are violated if adverse action is taken against him in retaliation for the exercise of his First Amendment rights, such as filing a grievance concerning the conditions of his imprisonment. *Douglas v. Yates*, ___ F.3d ___, 2008 WL 2875804 (11th Cir. 2008)(citing *Boxer X v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006)); *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003); *Mitchell v. Farcass*, 112 F.3d 1483, 1490 (11th Cir.1997); *Wright v. Newsome*, 795 F.2d 964 968 (11th Cir. 1986); *Adams v. James*, 784 F.2d 1077, 1080 (11th Cir. 1986). Retaliation against an inmate for exercising a constitutional right may be a constitutional violation even if no separate and additional constitutional violation ensues. *Farrow,* 320 F.3d at 1248; see also *Thomas v. Evans*, 880 F.2d 1235, 1242 (11th Cir. 1989) (the retaliatory penalty need not rise to the level of a separate constitutional violation to state a claim); *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (an inmate may still present a First Amendment retaliation claim even though complaint alleges facts "that might not otherwise be offensive to the Constitution," such as a search or the confiscation and destruction of nonlegal materials); *Wilson v. Silcox*, 152 F.Supp.2d 1345, 1351 (N.D. Fla. 2001)(citing cases); *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005) (retaliation based on a prisoner's exercise of his First Amendment rights violates the constitution). This is because "[t]he gist of a retaliation claim is that a prisoner is penalized for exercising" his constitutional right to free speech, redress of grievances, or similar activity. *Mitchell v. Farcass,* 112 F.3d 1483, 1490 (11th Cir. 1997) (quoting *Thomas,* 880 F.2d at 1242).

Although prisoners have a right to be free from retaliatory punishment for the exercise of a constitutional right, *Adams v. James*, 784 F.2d 1077, 1079-80 (11th Cir.

1986); *Bridges v. Russell*, 757 F.2d 1155 (11th Cir. 1985), broad, conclusory allegations of retaliation are insufficient to state a claim under section 1983. *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005); *Goldsmith v. Mayor and City Council of Baltimore*, 987 F.2d 1064, 1071 (4th Cir. 1993); *Flittie v. Solem*, 827 F.2d 276, 281 (8th Cir. 1987); *Gill v. Mooney*, 824 F.2d 192, 194 (2nd Cir. 1987). In order to state a claim, the retaliation complaint must identify both the retaliatory conduct and the underlying act that prompted the retaliation. See *Harbin-Bey*, 420 F.3d at 579; *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). A prisoner-plaintiff in a retaliation case must first prove that the conduct which led to the alleged retaliation was constitutionally protected. *Douglas v. Yates*, ___ F.3d ___, 2008 WL 2875804 (11th Cir. 2008); *Harbin-Bey*, 420 F.3d at 579; *Rauser v. Horn*, 241 F.3d 330, 333 (3rd Cir. 2001). He must then show that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech." *Douglas v. Yates*, ___ F.3d ___, 2008 WL 2875804 (11th Cir. 2008) (*citing Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)); see also *Wright v. Newsome*, 795 F.2d 964, 968 (11th Cir. 1986) (plaintiff must then "sufficiently allege facts" establishing that the actions taken against him were in retaliation for, for instance, filing lawsuits and accessing the courts, and would not have happened but for the retaliatory motive); *Harbin-Bey*, 420 F.3d at 579 (also requiring that the retaliatory act "would deter a person of ordinary firmness); *Jackson v. Fair*, 846 F.2d 811, 820 (1st Cir. 1988); *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2nd Cir. 1983). Adverse actions taken against an inmate in retaliation for filing grievances violate the inmate's constitutional rights. *Douglas v. Yates*, ___ F.3d ___, 2008 WL 2875804 (11th Cir. 2008); *Wildberger v. Bracknell*, 869 F.2d 1467, 1468 (11th Cir. 1989). However, plaintiff must come forward with more than "general attacks" upon the defendant's motivations and must produce "affirmative evidence" of retaliation. *Crawford-El v. Britton*, 523 U.S. 574, 118 S.Ct. 1584, 1598, 140 L.Ed.2d 750 (1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986)).

A causal connection between the protected conduct and the allegedly retaliatory act *may* be alleged by a chronology of events that create a plausible inference of retaliation. See *Cain v. Lane*, 857 F.2d 1139, 1143 n.6 (7th Cir. 1988); cf. *McElroy v. Lopac*, 403 F.3d 855 (7th Cir. 2005) (chronology of events is not *required* to state a claim under federal notice pleading standards). For instance, the temporal proximity of an allegedly retaliatory misbehavior report to a grievance filed by the prisoner may serve as circumstantial evidence of retaliation. *Gayle v. Gonyea,* 313 F.3d 677, 683-84 (2nd Cir. 2002); see also *Farrow v. West*, 320 F.3d 1235, 1248 (11th Cir. 2003)("A prisoner can establish retaliation by demonstrating that the prison official's actions were 'the result of his having filed a grievance concerning the conditions of his imprisonment.'").

In considering a plaintiff's allegations, appropriate deference must be afforded to prison officials "in the evaluation of proffered legitimate penological reasons for conduct alleged to be retaliatory." *Pratt v. Rowland,* 65 F.3d 802, 807 (9th Cir. 1995) (citing *Sandin v. Conner*, 115 S.Ct. 2293, 2299 (1995)). And, because regulatory actions taken by prison officials are presumed to be reasonable, the inmate must produce "specific, nonconclusory factual allegations that establish improper motive causing cognizable injury . . . " *Crawford-El*, 118 S.Ct. at 1596-97; *Harris*, 65 F.3d at 916-17; *National Archives and Records Admin. v.* Favish, 541 U.S. 157, 174, 124 S.Ct. 1570, 1581-1582, 158 L.Ed.2d 319 (2004) (the presumption of legitimacy afforded to the official conduct of government agents is only displaced by clear evidence to the contrary) (citations omitted); see also *Colon v. Coughlin*, 58 F.3d 865, 872 (2nd Cir. 1995) (Because claims of retaliation may be easily fabricated, they should be reviewed with skepticism). An inmate may not state a claim of retaliation where the "discipline [was] imparted for acts that a prisoner was not entitled to perform." *Cowans v. Warren*, 150 F.3d 910, 912 (8th Cir. 1998) (quoting *Orebaugh v. Caspari,* 910 F.2d 526, 528 (8th Cir.1990) (per curiam)); *see also, Romansky v. Stickman,* 147 Fed.Appx. 310, 2005 WL 2271154 (3rd Cir. 2005) (where a prisoner is found guilty of a disciplinary infraction, he does not state a claim for retaliation in its writing);

*Earnest v. Courtney*, 64 F.3d 365, 366-67 (8th Cir. 1995) (per curiam) (assignment to utility squad for gambling not retaliatory); *Henderson v. Baird*, 29 F.3d 464, 465, 469 (8th Cir.1994) (assault charge and conviction found not to be retaliatory; a finding that a prisoner violated the rules checkmates his retaliation claim); *Hartsfield v. Nichols,* 511 F.3d 826 (8th Cir. 2008) (citing *Henderson*); *Goff v. Burton*, 7 F.3d 734, 738 (8th Cir.1993) (alleged retaliatory transfer); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2nd Cir. 1996); *Wilson v. Phipps*, 149 F.3d 1185 (6th Cir. 1998) (Table, text in WESTLAW).

### B. Conclusions of law regarding material facts

Plaintiff contends that defendant Finch retaliated against him for the exercise of his constitutional rights by conducting a cell shakedown and explicitly informing plaintiff that the reason for the shakedown was plaintiff's grievance writing activity. Plaintiff filed a grievance with the warden asserting that Finch had retaliated against him on behalf of other officers by conducting the cell search. The warden responded as follows:

> Officer Finch states he observed you standing in your doorway acting in a suspicious manner - possibly being a lookout. As he entered the wing he heard an inmate make a "siren" sound obviously to warn other inmates he was on the wing. He states he did shake down your locker and found a bottle of whiteout. He states he did tell you to meet him behind the curtain (under video surveillance) so he could speak with you privately regarding how you were obtaining the whiteout since it is contraband. You told him you bought it on the yard from an inmate you refused to identify. Officer Finch states you brought up the grievance issues accusing him of conducting the search due to grievance filing. Officer Finch stated he did ask you what issue regarding the count procedure you were addressing but again after you volunteered the fact you had filed a grievance against security[.] Officer Finch denies retaliating against you and stated he was only doing his job. It is a fact you file grievances regarding a number of issues. However, filing grievances does not make you immune to security practices to include discipline if necessary.

(Doc. 11, exh. B-3). Plaintiff appealed, refuting Officer Finch's version of events and offering the names of witnesses who could support his story. The appeal was denied, with the finding that the response plaintiff had received at the institution level was appropriate and addressed his concerns. (Doc. 11, exh. B4-B7).

In order to establish a constitutional claim for retaliation, plaintiff must show first, that his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, that there is a causal connection between the retaliatory actions and the adverse effect on speech. *Douglas v. Yates*, ___ F.3d ___, 2008 WL 2875804 (11th Cir. 2008) (citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)). The Eleventh Circuit has adopted an objective test to determine whether there has been an adverse effect, requiring a plaintiff to show that defendant's allegedly retaliatory conduct would likely deter a person of ordinary firmness from the exercise of First Amendment rights. *Bennett*, 423 F.3d at 1250. The standard enunciated in *Yates* appears to assume the retaliatory nature of the adverse action taken against the plaintiff, a fact about which the parties are not in agreement. The Sixth Circuit has stated the three elements as follows: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two-that is, the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). It is this standard that the defendant applies to the facts of the instant case.

With respect to the first prong, the parties agree that writing grievances is constitutionally protected speech. Although knowledge is not specifically required, defendant claims that he was unaware, prior to the December 13, 2004 cell search, that plaintiff had written grievances. This assertion is in dispute, as plaintiff has presented sworn evidence to the contrary that defendant knew of and commented on plaintiff's writing of grievances.

**Defendant claims, with respect to the second part of the test, that plaintiff has failed to show than an adverse action was taken against plaintiff that would deter a person of ordinary firmness from continuing to engage in this conduct. Again, the facts underlying this case are clearly in dispute. Defendant claims that the cell search was not an "adverse action" at all because cell searches are routinely performed. (Doc. 118, exh. B). The defendant's motivation in conducting the cell search is key here. Defendant claims that he searched plaintiff's cell because of plaintiff's allegedly suspicious behavior, while plaintiff has presented sworn evidence that defendant specifically told him contemporaneous with the search that the search was performed in retaliation for plaintiff's having filed grievances. Defendant further contends that a person of ordinary firmness would not be deterred by such a search, noting that plaintiff filed a grievance about the incident. Again, plaintiff has presented sworn evidence to the contrary. Although plaintiff was not deterred in this situation, he and at least one other inmate state that they have been personally deterred from pursuing grievances for this reason, and they know of other inmates who have also been so deterred. (Doc. 123, exh. A, E, & F). This meets the threshold set forth in** *Bennett.* *Bennett***, 423 F.3d at 1250.**

**Finally, defendant claims that plaintiff cannot show that his constitutionally protected conduct, the filing of grievances, was a substantial or motivating factor in the defendant's decision to take the allegedly adverse action of searching plaintiff's cell. As noted above, although defendant claims that he would have taken the same action in the absence of plaintiff's protected speech, plaintiff has presented sworn evidence disputing defendant's version of events. While defendant claimed to have seen plaintiff at the front of his cell when he entered the wing, an observation he relayed to Officer Andrews,[4] plaintiff and his roommate both submitted affidavits stating that plaintiff was lying on his bunk the entire time, and was not standing at**

---

[4] It is not clear from the way Officer Andrews' affidavit is worded whether he personally saw the plaintiff appearing to be "acting as a lookout" or whether this was reported to him after having been observed by Officer Finch. (Doc. 118, exh. C).

*Case No: 5:05cv111/LAC/MD*

the cell door as described. (Doc. 123, exh. A & B). Plaintiff also refutes defendant's claim of having heard an inmate make a "siren" sound when he entered the wing. (Doc. 123, exh. A).

Although defendant Finch may be entitled to prevail if his version of the facts are ultimately found to be correct, since the defendant is the moving party, the facts must be taken in the light most favorable to the plaintiff. Succinctly stated, those facts are that defendant Finch told plaintiff that he was conducting a cell search as a result of plaintiff's having filed grievances against staff, and such a search is sufficient to deter inmates of ordinary firmness from writing grievances. When the facts are viewed in that light, plaintiff has established a prima facie case of retaliation under the First Amendment[5] and has rebutted defendant's fact-based argument that the cell search was merely done to advance legitimate penological goals. Therefore, defendant's second motion for summary judgment must fail.[6]

Accordingly, it is respectfully RECOMMENDED:

That defendant Finch's second motion for summary judgment (doc. 118) be DENIED and this case be referred to the undersigned for further proceedings.

At Pensacola, Florida, this 8th day of August, 2008.

/s/ *Miles Davis*
**MILES DAVIS**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] Defendant's arguments with respect to the Fourth and Eighth Amendments are not relevant as plaintiff's claim arises only under the First Amendment.

[6] The issues of exhaustion and qualified immunity were already decided adversely to the defendant in the court's recommendation on his first motion for summary judgment.

*Case No: 5:05cv111/LAC/MD*

## NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within ten days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; *United States v. Roberts,* 858 F.2d 698, 701 (11th Cir. 1988).